IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Michael Anthony Sarratt, a/k/a Michael A. Sarratt, a/k/a Goddess Shuggar Sarratt, | ) ) ) | C/A No.: 8:16-cv-03486-RBH-JDA |
| Plaintiff, | ) ) | |
| v. | ) ) ) ) | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| South Carolina Department of Corrections; Bryan P. Stirling, *Director;* Sandra R. Barrett, *Deputy Director*, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on two motions for preliminary injunction [Docs. 21; 54] and a motion to amend the first motion for preliminary injunction [Doc. 27] filed by Plaintiff. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, who provides an alias of Goddess Shuggar Sarratt, alleges that she is a transgender woman incarcerated within SCDC and housed at Broad River Correctional Institution ("BRCI"), a male correctional facility. [Docs. 1 at 2; 1-1.] Plaintiff seeks treatment for Gender Dysphoria ("GD"). [Doc. 1-1.] Plaintiff filed the first motion for preliminary injunction on February 16, 2017 [Doc. 21], which she moved to amend on March 9, 2017 [Doc. 27]. Defendants filed a response in opposition to both motions on March 22, 2017 [Doc. 34], to which Plaintiff filed a reply on April 6, 2017 [Doc. 40]. On March 23, 2017, the Court took the motions under advisement because Defendants agreed

that Plaintiff should be evaluated for GD and Defendants needed time to schedule an evaluation. [Doc. 37.] Defendant South Carolina Department of Corrections ("SCDC") contacted Dr. Gregg Dwyer ("Dr. Dwyer"), Director of the Sexual Behaviors Clinic and Lab at the Medical University of South Carolina ("MUSC") and specialist in the area of transgender individuals, to conduct the evaluation of Plaintiff. [Docs. 42; 43.] The agreement for Dr. Dwyer to evaluate Plaintiff was sent to SCDC on March 23, 2017; signed by SCDC on April 12, 2017; returned to MUSC on April 14, 2017; and received again by SCDC with signatures on June 13, 2017. [Doc. 53 at 1.] Defendants' June 22, 2017, status report indicates that SCDC has requested the evaluation take place as soon as possible. [*Id.*] In preparation for the evaluation, Dr. Dwyer has requested Plaintiff's records from the Department of Juvenile Justice, Department of Mental Health, school districts in Greenville and Spartanburg, and the Greenville County Detention Center. [Doc. 55 at 2.] On July 28, 2017, 2,000 pages of records were hand-delivered to Dr. Dwyer. [*Id.*] SCDC is waiting for the school district records and will provide those records to Dr. Dwyer as soon as they are received. [*Id.*]

On July 17, 2017, Plaintiff filed a second motion for preliminary injunction [Doc. 54], to which Defendants filed a response in opposition on July 31, 2017 [Doc. 55]. Accordingly, Plaintiff's motions are ripe for review.

## **BACKGROUND**

Plaintiff alleges she has Gender Identity Disorder ("GID"), or GD, a condition under which a person feels strongly that he or she is not the gender of his or her physical appearance. [*See* Doc. 1-1 at 1.] Plaintiff states that while she was born male, she identifies as female. [*Id.*] In her § 1983 Complaint, Plaintiff alleges violations of her First,

2

Fourth, Eighth, and Fourteenth Amendment rights. [Doc. 1. at 4.] She seeks relief including being treated for GD, being protected in accordance with the Prison Rape Elimination Act standards, and "equal protection as Female inmates in SCDC." [*Id.* at 6.] Plaintiff asserts that because she is not receiving proper treatment for GD, she is left in a state of cruel and unusual punishment in violation of the Eighth Amendment, and she is denied equal protection or due process in violation of the Fourteenth Amendment. [Doc. 1-1 at 1–2.] Plaintiff argues that because SCDC houses inmates based on genital organs, transgender inmates are placed in danger. [*Id.*] Further, Plaintiff alleges that she is placed in danger when she is subjected to body cavity searches by male corrections officers and when she is forced to shower and share bathroom facilities with male inmates. [*Id.* at 3.] Additionally, Plaintiff argues that her rights under the First and Eighth Amendments are violated when she is forced to follow a grooming policy designed for male inmates, to wear male garments, and to use male hygiene items. [*Id.* at 4.] Last, Plaintiff alleges a violation of the Fourteenth Amendment based on SCDC's failure to assist with the changing of her name to a female name in accordance with treatment for GD. [*Id.* at 4.]

## APPLICABLE LAW

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

3

> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is

4

responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Requirements for a Preliminary Injunction**

Usually, a temporary restraining order or preliminary injunction "protect[s] the status quo . . . to prevent irreparable harm during the pendency of a lawsuit [and] ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir. 2003). However, mandatory preliminary injunctions, which compel action, "do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) (citing *Interstate Commerce Comm'n v. Baltimore & Annapolis R.R. Co.*, 64 F.R.D. 337 (D. Md. 1974)). Therefore, "a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *Microsoft*, 333 F.3d at 526.

In any event, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (citing *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)). To obtain a preliminary injunction, a plaintiff must show four elements:

5

> 1) he is likely to succeed on the merits,
>
> 2) he will suffer irreparable harm if the preliminary injunction is not granted,
>
> 3) the balance of equities favors him, and
>
> 4) the injunction is in the public interest.

*Id.* at 20; *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009) (explaining how the *Winter* standard for preliminary injunctions is different from the standard previously applied in the Fourth Circuit), *judgment vacated and remanded*, 130 S. Ct. 2371 (2010), *in light of Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010). The plaintiff must establish all four elements to receive injunctive relief. *Winter*, 555 U.S. at 20.

Under *Winter*, the Supreme Court requires "that the plaintiff make a clear showing that [he] will likely succeed on the merits at trial." *Real Truth About Obama*, 575 F.3d at 346 (citing *Winter*, 555 U.S. at 20). Moreover, the party seeking the injunction must make a clear showing that it will likely suffer irreparable harm without an injunction. *Id.* at 347 (citing *Winter*, 555 U.S. at 20). Further, the Supreme Court in *Winter* emphasized the public interest requirement, requiring courts to pay "'particular regard for the public consequences in employing the extraordinary remedy of injunction.'" 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

## **DISCUSSION**

As stated, pending before the Court are Plaintiff's first motion for preliminary injunction, motion to amend the first motion for preliminary injunction, and second motion for preliminary injunction. [Docs. 21; 27; 54.] The undersigned acknowledges that

6

preliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances. See *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). After a careful review of the record, for the reasons discussed below, the undersigned recommends that Plaintiff's first motion for preliminary injunction and motion to amend be denied with leave to refile and second motion for preliminary injunction be found as moot.

**First Motion for Preliminary Injunction**[1]

In her first motion for preliminary injunction, Plaintiff states that she "has never been diagnosed with GD, treated for GD, nor counseled for GD," as the result of SCDC "not categorizing GD as a diagnosis for treatment by medical or mental health professionals." [Doc. 21 at 3.] Plaintiff argues that SCDC has failed to follow the generally accepted protocols or Standards of Care, published by the World Professional Association for Transgender Health, which includes: hormone therapy, sex reassignment surgery, counseling, and access to certain commissary items. [*Id.* at 2–3 (citing *De'lonta v. Johnson*, 708 F.3d 520, 522–23 (4th Cir. 2013)).] Plaintiff moves for a preliminary injunction, requesting that Defendants allow Plaintiff to be evaluated for GD; that all body and cavity searches be conducted by female staff members and that she be able to shower in private, away from male officers and when the male inmates are locked down; and that she be allowed to follow the grooming policy for female inmates. [Doc. 21 at 7.] Plaintiff also requests that Defendants house her with another transgender inmate or place her in a single cell. [Doc. 27 at 1.] Plaintiff states that she is not in danger and is not requesting

---

[1]For purposes of this discussion, the Court treats Plaintiff's first motion for preliminary injunction [Doc. 21] and motion to amend [Doc. 27] as a single motion.

to be segregated or removed from general population, but seeks to enforce her right to privacy. [*Id.* at 1–2.]

In response, Defendants agree to Plaintiff's first request—that she be seen by a mental health professional and evaluated for GD. [Doc. 34 at 1.] As stated, SCDC has entered into an agreement for Plaintiff to be evaluated by Dr. Dwyer and have requested that the evaluation occur as soon as possible. Defendants concede that if Plaintiff is found to have GD, she will be provided treatment that is determined to be medically necessary by her healthcare provider. [*Id.*] Defendants oppose Plaintiff's remaining requests as premature. [*Id.*] Further, Defendants argue that Plaintiff cannot satisfy the four factors required to obtain a preliminary injunction. [*Id.* at 3.]

The evaluation and determination of whether Plaintiff suffers from GD is pivotal to this action and Plaintiff's requests for preliminary injunctive relief. Because a preliminary injunction is "an extraordinary remedy. . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Plaintiff must satisfy all four of these requirements. *See Real Truth About Obama*, 575 F.3d at 347. At this time, Plaintiff has failed to demonstrate her likelihood of success on the merits of her claim because she has not yet been diagnosed with GD. Consequently, after a careful review of the record, the undersigned recommends that Plaintiff's first motion for preliminary injunction be denied with leave to refile following the results of Dr. Dwyer's evaluation.[2]

---

[2]The undersigned notes that the other relief Plaintiff requests would be moot if Dr. Dwyer's evaluation finds that Plaintiff does not suffer from GD and Defendants have agreed to treat Plaintiff if she is diagnosed to suffer from GD. *See, e.g., Jones v. Doe*, No. GLR-15-3065, 2016 WL 3027529, *6 (D. Md. May 26, 2016) (finding that Defendants cannot be deliberately indifferent to medical need to receive treatment for GD because Plaintiff had not been diagnosed with GD).

**Second Motion for Preliminary Injunction**

In the second motion for preliminary injunction, Plaintiff states that because her present living conditions are "safe, secure, and at peace," she requests a "hold on all her classification reviews, custody level reviews, and any attempted institutional reassignments, etc." [Doc. 54 at 1.] Defendants concede that, barring exigent circumstances, Plaintiff shall remain at her current institution at this time and will not be moved until the evaluation by Dr. Dwyer is complete. [Doc. 55 at 1–2.] Because Defendants concede that Plaintiff shall remain at her current institution until the evaluation by Dr. Dwyer is complete and Plaintiff currently feels safe and secure in that environment, the undersigned recommends that Plaintiff's second motion for preliminary injunction be found as moot.[3]

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Plaintiff's first motion for preliminary injunction [Doc. 21] and Plaintiff's motion to amend the motion for preliminary injunction [Doc. 27] be DENIED with leave to refile; and Plaintiff's second motion for preliminary injunction [Doc. 54] be FOUND AS MOOT.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 10, 2017
Greenville, South Carolina

---

[3] Should Plaintiff be notified that she is being transferred in the future, Plaintiff may move for injunctive relief at that time.